**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO ESTRADA, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>SLACK TECHNOLOGIES, INC., STEWART BUTTERFIELD, ANDREW BRACCIA, EDITH COOPER, SARAH FRIAR SHEILA JORDAN, MIKE McNAMARA, JOHN O'FARRELL, GRAHAM SMITH, SALESFORCE.COM, INC., SKYLINE STRATEGIES I INC., and SKYLINE STRATEGIES II LLC,<br><br>    Defendants. | **Case No.:**<br><br>**CLASS ACTION**<br><br>CLASS ACTION COMPLAINT FOR:<br>(1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting Breach of Fiduciary Duties<br>(3) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(4) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Armando Estrada ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.    Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Slack Technologies, Inc. ("Slack" or the "Company"), against Slack and the Company's Board of Directors (the "Board" or the "Individual Defendants,"), Salesforce.com,

Inc. ("Parent"), Skyline Strategies I, Inc. ("Merger Sub I"), and Skyline Strategies II LLC ("Merger Sub II, collectively with Parent and Merger Sub I, "Salesforce, and (Salesforce, together with the Company and the Individual Defendants, collectively referred to hereinafter as the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Salesforce as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on a proposed cash and stock transaction valued at approximately $27.7 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 1, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Slack will become an indirect wholly-owned subsidiary of Salesforce, and Slack stockholders will receive only $26.79 in cash and 0.0776 shares of Salesforce common stock for each Slack common stock they own. As a result of the Proposed Transaction, Plaintiff and other Slack stockholders will see their current interest in the Company diluted heavily into interest into Salesforce.

3.      Thereafter, on December 23, 2020, Salesforce filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is a foregone conclusion, with holders of approximately 55% of the voting stock of Slack entering into a voting and support agreement pledging to vote in favor of the Proposed Transaction.   This, coupled with the fact that there is no "majority of the minority" vote required, all but ensure the consummation of the flawed Proposed Transaction

5.      The dubious nature of the Proposed Transaction is laid bare considering the lack of protections afforded Slack stockholders against fluctuations in Salesforce's share price.   Here, the Merger Consideration is composed partially of Salesforce common stock exchanged at a fixed exchange ratio of 0.0776 which means that Slack stockholders will receive 0.0776 shares of Salesforce common stock as a portion of the merger consideration in exchange for each of their

Slack shares, regardless of Salesforce's stock price at the close of the transaction.  Thus, the consideration payable to Slack's stockholders is not insulated from fluctuations in Salesforce's stock price, and stockholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.

6.     The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Registration Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" with the sole goal of a sale to Salesforce, and in which no other potentially interested third parties were contacted.

7.     In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Slack without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Salesforce without regard for Slack public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Slack stockholders

8.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

9.     In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on December 23, 2020 with the SEC in an effort to solicit stockholders to vote their Slack shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Slack's stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the

CLASS ACTION COMPLAINT

Defendants fiduciary duties.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Slack and Salesforce, provided by Slack and Salesforce to the Company's financial advisors Qatalyst Partners L.P. ("Qatalyst") and Goldman Sachs & Co., LLC ("Goldman"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Qatalyst and Goldman and provide to the Company and the Board.

10.    Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

11.    Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Slack stockholder.

12.    Defendant Slack operates Slack, a business technology software platform in the United States and internationally.  Slack is incorporated under the laws of the State of Delaware and has its principal place of business at 500 Howard Street, San Francisco, CA 94105. Shares of Slack common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "WORK."

13.    Defendant Stewart Butterfield ("Butterfield") has been a Director of the Company at all relevant times.  In addition, Butterfield serves as the Chief Executive Officer ("CEO") of the Company and is a co-founder of the Company.

14.    Defendant Andrew Braccia ("Braccia") has been a director of the Company at all relevant times.

15.    Defendant Edith Cooper ("Cooper") has been a director of the Company at all relevant times.

16.     Defendant Sarah Friar ("Friar") has been a director of the Company at all relevant times.

17.     Defendant Sheila Jordan ("Jordan") has been a director of the Company at all relevant times.

18.     Defendant Mike McNamara ("McNamara") has been a director of the Company at all relevant times.

19.     Defendant John O'Farrell ("O'Farrell") has been a director of the Company at all relevant times.

20.     Defendant Graham Smith ("Smith") has been a director of the Company at all relevant times. Notably, Smith is the former Chief Financial Officer ("CFO") of Parent.

21.     Defendants identified in ¶¶ 13 - 20 are collectively referred to as the "Individual Defendants."

22.     Defendant Salesforce.com, Inc. develops enterprise cloud computing solutions with a focus on customer relationship management worldwide. Salesforce.com, Inc. is incorporated under the laws of the State of Delaware and has its primary place of business at Salesforce Tower, 415 Mission Street, 3rd Fl., San Francisco, CA 94105.  Shares of Salesforce.com, Inc. common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "CRM."

23.     Defendant Merger Sub I is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

24.     Defendant Merger Sub I is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

26.     Personal jurisdiction exists over each defendant either because the defendant

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Slack has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Slack common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

29.     This action is properly maintainable as a class action because:

    a.  The Class is so numerous that joinder of all members is impracticable. According to Company's most recently filed 10-Q prior to the announcement of the Proposed Transaction, as of November 16, 2020, there were over 489 million shares of Slack common stock outstanding. The actual number of public stockholders of Slack will be ascertained through discovery;

    b.  There are questions of law and fact which are common to the Class, including *inter alia*, the following:

        i.  Whether Defendants have violated the federal securities laws;

        ii. Whether Defendants made material misrepresentations and/or omitted material facts in the Registration Statement; and

        iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

CLASS ACTION COMPLAINT

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## **THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

30.  By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Slack and owe the Company the duties of due care, loyalty, and good faith.

31.  By virtue of their positions as directors and/or officers of Slack, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Slack to engage in the practices complained of herein.

32.  Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

CLASS ACTION COMPLAINT

b. act in the best interest of the company;

c. use reasonable means to obtain material information relating to a given action or decision;

d. refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e. avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f. disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

33.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Slack, are obligated to refrain from:

a.    participating in any transaction where the directors' or officers' loyalties are divided;

b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

CLASS ACTION COMPLAINT

34.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Slack, Plaintiff and the other public stockholders of Slack, including their duties of loyalty, good faith, and due care.

35.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Slack common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

36.    Slack operates as a business technology software platform in the United States and internationally.

37.    The Company's platform brings together people, applications, and data, as well as sells its offering under a software-as-a-service model.

38.    The Company's recent financial performance indicates a financially strong company on the rise. For example, in a September 8, 2020 press release announcing its Q2 financial results, the Company highlighted such financial achievements as an increase in revenue of 49% year-over-year, and an increase in paid customers of 30% year-over-year. Defendant Stewart Butterfield commented on these results, "Paid Customer growth — which is the single most important driver of the business over the long term — accelerated in Q2, up 30% year-over-year." Butterfield continued, "One of the drivers of this acceleration was Slack Connect, which offers seamless, secure intercompany collaboration that we believe is light years ahead of email. We ended the quarter with more than 380,000 connected endpoints, up more than 200% year-over-year, and now more than 52,000 Paid Customers use Connect, up 160% year-over-year."

39.    Despite this upward trajectory and increasing financial results, the Individual Defendants have caused Slack to enter into the Proposed Transaction for insufficient consideration.

CLASS ACTION COMPLAINT

1    *The Flawed Sales Process*

2        40.    As detailed in the Registration Statement, the process deployed by the Individual

3    Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

4    Defendants

5        41.    First, the Proposed Transaction is a foregone conclusion, with holders of

6    approximately 55% of the voting stock of Slack entering into a voting and support agreement

7    pledging to vote in favor of the Proposed Transaction.  This, coupled with the fact that there is no

8    "majority of the minority" vote required, all but ensure the consummation of the Proposed

9    Transaction.

10        42.    Moreover, the Registration Statement indicates that the "sales process" was

11    anything but, with Salesforce initiating discussions regarding a potential transaction, and neither

12    Slack nor any of its financial advisors conducting any sort of market check for potentially

13    interested third parties.

14        43.    In addition, while the Registration Statement indicates that a Special Strategic

15    Transaction Committee of the Slack Board was created to run the sales process, it provides no

16    information regarding the specific powers of this committee, other than its role was to "assist"

17    Defendant and CEO Butterfield in the negotiations.  Notably, there is no discussion if the Special

18    Strategic Transaction Committee's approval was required for any potential strategic alternative,

19    independent of that of the full Board.

20        44.    Relatedly, while the Registration Statement indicates that the Special Strategic

21    Transaction Committee was composed of independent directors, Defendant Smith, the former CFO

22    of Salesforce, was included on the committee, representing a clear conflict of interest.

23        45.    The Registration Statement does not indicate why it was necessary to engage

24    Goldman as an additional financial advisor after Qatalyst had already been engaged to serve as a

25    financial advisor regarding the sales process. Moreover, the Registration Statement fails to

26    indicate, why Qatalyst could not accomplish the tasks necessary of it as a financial advisor.  Such

27    information is relevant considering Qatalyst and Goldman stand to make approximately $60

28

CLASS ACTION COMPLAINT

million and $38.9 million, respectively for their services rendered as financial advisors in relation to the Proposed Transaction.

46.    The Registration Statement is also unclear as to the existence or nature of any non-disclosure agreement entered into between Slack and any potentially interested third party, including Salesforce, as part of the sales process, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

47.    Finally the Registration Statement makes no mention as to why the Slack Board allowed the merger consideration to be composed in part of Salesforce stock at a fixed exchange ratio with no collar to protect the Company's public stockholders from fluctuations in Salesforce's price.

48.    It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

49.    On December 1, 2020, Salesforce and Slack issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SAN FRANCISCO, Dec. 1, 2020** - Salesforce (NYSE: CRM), the global leader in CRM, and Slack Technologies, Inc. (NYSE: WORK), the most innovative enterprise communications platform, have entered into a definitive agreement under which Salesforce will acquire Slack. Under the terms of the agreement, Slack shareholders will receive $26.79 in cash and 0.0776 shares of Salesforce common stock for each Slack share, representing an enterprise value of approximately $27.7 billion based on the closing price of Salesforce's common stock on November 30, 2020.
>
> Combining Slack with Salesforce Customer 360 will be transformative for customers and the industry. The combination will create the operating system for the new way to work, uniquely enabling companies to grow and succeed in the all-digital world.
>
> "Stewart and his team have built one of the most beloved platforms in enterprise software history, with an incredible ecosystem around it," said Marc Benioff, Chair and CEO, Salesforce. "This is a match made in heaven. Together, Salesforce and Slack will shape the future of enterprise software and transform the way everyone

works in the all-digital, work-from-anywhere world. I'm thrilled to welcome Slack to the Salesforce Ohana once the transaction closes."

"Salesforce started the cloud revolution, and two decades later, we are still tapping into all the possibilities it offers to transform the way we work. The opportunity we see together is massive," said Stewart Butterfield, Slack CEO and Co-Founder. "As software plays a more and more critical role in the performance of every organization, we share a vision of reduced complexity, increased power and flexibility, and ultimately a greater degree of alignment and organizational agility. Personally, I believe this is the most strategic combination in the history of software and I can't wait to get going."

Acquisition to Create the Operating System for the New Way to Work

The events of this year have greatly accelerated the move by companies and governments to an all-digital world, where work happens wherever people are— whether they're in the office, at home or somewhere in between. They need to deliver connected experiences for their customers across every touchpoint and enable their employees to work seamlessly wherever they are.

Together, Salesforce and Slack will give companies a single source of truth for their business and a unified platform for connecting employees, customers and partners with each other and the apps they use every day, all within their existing workflows.

Slack to Become the New Interface for Salesforce Customer 360

Salesforce is the #1 CRM that enables companies to sell, service, market and conduct commerce, from anywhere. Slack brings people, data and tools together so teams can collaborate and get work done, from anywhere. Slack Connect extends the benefits of Slack to enable communication and collaboration between a company's employees and all its external partners, from vendors to customers.

Slack will be deeply integrated into every Salesforce Cloud. As the new interface for Salesforce Customer 360, Slack will transform how people communicate, collaborate and take action on customer information across Salesforce as well as information from all of their other business apps and systems to be more productive, make smarter, faster decisions and create connected customer experiences.

Slack To Expand Enterprise Footprint as Part of the World's #1 CRM

Slack serves leading organizations in every industry around the world, from the fastest growing startups to Fortune 500 companies, such as Starbucks, Target and TD Ameritrade, along with leading academic institutions, non-profits, and governments in more than 150 countries.

As part of the world's #1 CRM, Slack will be able to expand its presence in the enterprise, not just among Salesforce customers, but for any company undergoing

CLASS ACTION COMPLAINT

digital transformation. Upon the close of the transaction, Slack will become an operating unit of Salesforce and will continue to be led by CEO Stewart Butterfield.

Combination to Form the Largest Open Ecosystem of Apps and Workflows for Business

Connecting people and data across systems, apps and devices is one of the biggest challenges companies face in today's all-digital world.

Slack's open platform seamlessly integrates with more than 2,400 apps that people use to collaborate, communicate and get work done. With the largest enterprise app ecosystem, the Salesforce platform is the easiest way to build and deliver apps to connect with customers in a whole new way.

Together, Salesforce and Slack will create the most extensive open ecosystem of apps and workflows for business and empower millions of developers to build the next generation of apps, with clicks not code.

Details on the Proposed Transaction

The board of directors of each of Salesforce and Slack have approved the transaction and the Slack board recommends that Slack stockholders approve the transaction and adopt the merger agreement. The transaction is anticipated to close in the second quarter of Salesforce's fiscal year 2022, subject to approval by the Slack stockholders, the receipt of required regulatory approvals and other customary closing conditions.

Salesforce has also entered into a voting agreement with certain stockholders of Slack common stock, under which each such stockholder has agreed to vote all of their Slack shares in favor of the transaction at the special meeting of Slack stockholders to be held in connection with the transaction, subject to certain terms and conditions. The Slack shares subject to the agreement represent approximately 55% of the current outstanding voting power of the Slack common stock.

Salesforce expects to fund the cash portion of the transaction consideration with a combination of new debt and cash on Salesforce's balance sheet. Salesforce has obtained a commitment from Citigroup Global Markets Inc., Bank of America, N.A. and JPMorgan Chase Bank, N.A. for a $10.0 billion senior unsecured 364-day bridge loan facility, subject to customary conditions.

About Salesforce

Salesforce, the global CRM leader, empowers companies of every size and industry to digitally transform and create a 360° view of their customers. For more information about Salesforce (NYSE: CRM), visit: www.salesforce.com.

Any unreleased services or features referenced in this or other press releases or public statements are not currently available and may not be delivered on time or

at all. Customers who purchase Salesforce applications should make their purchase decisions based upon features that are currently available. Salesforce has headquarters in San Francisco, with offices in Europe and Asia, and trades on the New York Stock Exchange under the ticker symbol "CRM." For more information please visit https://www.salesforce.com, or call 1-800-NO-SOFTWARE.

About Slack

Slack has transformed business communication. It's the leading channel-based messaging platform, used by millions to align their teams, unify their systems, and drive their businesses forward. Only Slack offers a secure, enterprise-grade environment that can scale with the largest companies in the world. It is a new layer of the business technology stack where people can work together more effectively, connect all their other software tools and services, and find the information they need to do their best work. Slack is where work happens.

Slack and the Slack logo are trademarks of Slack Technologies, Inc. or its subsidiaries in the U.S. and/or other countries. Other names and brands may be claimed as the property of others.

Advisors

BofA Securities, Inc. is serving as exclusive financial advisor to Salesforce and Wachtell, Lipton, Rosen & Katz and Morrison & Foerster LLP are serving as legal counsel to Salesforce. Qatalyst Partners LP and Goldman Sachs & Co. LLC are serving as financial advisors to Slack. Latham & Watkins LLP and Goodwin Procter LLP are serving as legal counsel to Slack.

***The Inadequate Merger Consideration***

50.    Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

51.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements of the Company in recent times.

52.    The transaction may undervalue the Company and would result in a substantial loss for many Slack stockholders. For example, the merger consideration of approximately $45.86

CLASS ACTION COMPLAINT

1    indicates virtually no premium is being offered to Slack stockholders, based on FBN Securities

2    valuation of the Company of approximately $45.00 per share as recently as July 2020.

3              53.    Moreover, post-closure, Slack stockholders ownership interest in the Company will

4    be severely diluted.

5              54.    It is clear from these statements and the facts set forth herein that this deal is

6    designed to maximize benefits for Salesforce at the expense of Slack stockholders, which clearly

7    indicates that Slack stockholders were not an overriding concern in the formation of the Proposed

8    Transaction.

9    ***Preclusive Deal Mechanisms***

10             55.    The Merger Agreement contains certain provisions that unduly benefit Salesforce

11   by making an alternative transaction either prohibitively expensive or otherwise impossible.

12   Significantly, the Merger Agreement contains a termination fee provision that is especially onerous

13   and impermissible.  Notably, in the event of termination, the merger agreement requires Slack to

14   pay up to $900 million to Salesforce, if the Merger Agreement is terminated under certain

15   circumstances.  Moreover, under one circumstance, Slack must pay this termination fee even if it

16   consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within*

17   *12 months following the termination* of the Merger Agreement.  The termination fee will make the

18   Company that much more expensive to acquire for potential purchasers.  The termination fee in

19   combination with other preclusive deal protection devices will all but ensure that no competing

20   offer will be forthcoming.

21             56.    The Merger Agreement also contains a "No Solicitation" provision that restricts

22   Slack from considering alternative acquisition proposals by, *inter alia*, constraining Slack's ability

23   to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the

24   provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or

25   inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide

26   acquisition proposal if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*"

27   as defined in the Merger Agreement.

28

57.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Salesforce information in order to match any other offer, thus providing Salesforce access to the unsolicited bidder's financial information and giving Salesforce the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Salesforce.

58.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

59.     In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness.  In a conventional transaction which contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable.  Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders.  The Merger Agreement contains none of these protections.  Rather, the Merger Agreement contains a *fixed* exchange ratio of 0.0776 which means that Slack stockholders will receive 0.0776 shares of Salesforce common stock as a portion of the Merger Consideration in exchange for each of their Slack shares, regardless of Salesforce's stock price at the close of the transaction.  Thus, the consideration payable to Slack stockholders is not insulated from fluctuations in Salesforce stock price, and stockholders are left in the precarious position of not knowing whether the consideration payable to them will decline.

60.     Notably, Salesforce's common stock has fallen from $245.80 per share on November 30, 2020, the last trading day before the announcement of the Proposed Transaction, to as low as $215.78 in recent weeks, or a reduction of more than 12%, resulting in a corresponding reduction to the merger consideration offered.

61.     Finally, the Proposed Transaction is a foregone conclusion, with holders of approximately 55% of the voting stock of Slack entering into a voting and support agreement pledging to vote in favor of the Proposed Transaction.  This, coupled with the fact that there is no "majority of the minority" vote required, all but ensure the consummation of the Proposed Transaction.

62.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

63.     The breakdown of the benefits of the deal indicate that Slack insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Slack.

64.     Certain insiders stand to receive significant financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction.  Significantly, while the Registration provides the following information, it does not provide a breakdown of the total consideration that will be granted to the holders of such large stock blocks.

| | Shares Beneficially Owned | | | | | |
| | Class A | | Class B | | Total Voting%† | Total Ownership% |
| | Shares | % | Shares | % | | |
| **5% Stockholders:** | | | | | | |
| Entities affiliated with Accel[1] | 1,284,682 | * | 8,146,695 | 9.8% | 6.2% | 1.6% |
| Entities affiliated with Morgan Stanley[2] | 65,857,099 | 13.3% | — | — | 5.0% | 11.4% |
| Entities affiliated with T. Rowe Price[3] | 61,997,396 | 12.5% | — | — | 4.7% | 10.7% |
| Entities affiliated with The Vanguard Group[4] | 37,567,806 | 7.6% | — | — | 2.8% | 6.5% |
| Entities affiliated with FMR[5] | 21,827,230 | 4.4% | — | — | 1.6% | 3.8% |
| **Named Executive Officers and Directors:** | | | | | | |
| Stewart Butterfield[6] | 2,488,318 | * | 38,584,666 | 46.1% | 29.2% | 7.1% |
| Shares subject to voting proxy[7] | 235,307 | * | 35,640,565 | 42.6% | 26.8% | 6.2% |
| Total[6][7] | 2,723,625 | * | 74,225,231 | 88.7% | 55.9% | 13.3% |
| Allen Shim[8] | 2,131,753 | * | 255,012 | * | * | * |

| | | | | | | |
|---|---|---|---|---|---|---|
| Robert Frati[9] | 268,280 | * | 61,250 | * | * | * |
| Andrew Braccia[10] | 1,770,344 | * | 8,146,695 | 9.8% | 6.3% | 1.7% |
| Edith Cooper[11] | 187,981 | * | 17,090 | * | * | * |
| Sarah Friar[12] | — | — | 406,017 | * | * | * |
| Sheila B. Jordan[13] | 3,273 | * | — | — | * | * |
| Michael M. McNamara[14] | 4,647 | * | — | — | * | * |
| John O'Farrell[15] | 1,018,138 | * | — | — | * | * |
| Graham Smith[16] | 44,000 | * | 150,000 | * | * | * |
| All directors and executive officers as a group (13 persons)[17] | 8,522,646 | 1.7% | 83,384,791 | 99.1% | 63.0% | 15.9% |

65.    Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement.  Despite this the Registration Statement does not provide a breakdown of these benefits for Slack insiders.

66.    Moreover, certain employment agreements with certain Slack executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Slack common stockholders, and if exercised will be paid out as follows:

**Golden Parachute Compensation**

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($) | Total ($) |
|---|---|---|---|---|
| Stewart Butterfield | 820,251 | 92,949,856 | — | 93,770,107 |
| Allen Shim | 620,120 | 21,150,293 | — | 22,029,213 |
| Robert Frati | 878,920 | 16,543,881 | — | 17,164,001 |

67.    In addition, the Registration Statement notes that several of the Company insiders, including Defendant Butterfield will continue in employment roles with the surviving company. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

68.     Thus, while the Proposed Transaction is not in the best interests of Slack stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

69.     On December 23, 2020, the Defendants caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading up to the Proposed Transaction*

70.     The Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   The specific reasoning as to why the Board did not negotiate a "majority of the minority" voting provision in the Proposed Transaction given that approximately 55% of the voting stock of the Company is subject to the Voting Agreement requiring said stock to vote in favor of the Proposed Transaction;

b.   The nature of any differences that exist between the various non-disclosure agreements entered into between Slack and any interested third parties, including Salesforce;

c.   The Specific powers of the Special Strategic Transaction Committee, including whether it had the independent authority to reject or approve any potential transaction;

d.   The specific reasoning as to why Defendant Smith was included on the Special Strategic Transaction Committee given his previous employment relationship with Salesforce;

CLASS ACTION COMPLAINT

e.  The specific reasoning as to why neither Slack nor any of its financial advisors conducting any sort of market check for potentially interested third parties during the sales process;

f.  The specific reasoning as to why it was necessary to engage Goldman as an additional financial advisor after Qatalyst had already been engaged to serve as a financial advisor regarding the sales process. Moreover, the Registration Statement fails to indicate, why Qatalyst could not accomplish the tasks necessary of it as a financial advisor. Such information is relevant considering Qatalyst and Goldman stand to make approximately $60 million and $38.9 million, respectively for their services rendered as financial advisors in relation to the Proposed Transaction;

g.  The specific reasoning as to why the Slack Board allowed the merger consideration to be composed in part of Salesforce stock at a fixed exchange ratio with no collar to protect the Company's public stockholders from fluctuations in Salesforce's price; and

h.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Slack and Salesforce's Financial Projections*

71.  The Registration Statement fails to provide material information concerning financial projections provided by Slack and Salesforce management and relied upon by Qatalyst and Goldman in their analyses. The Registration Statement discloses management-prepared financial projections for the Company and Salesforce which are insufficient and/or materially

misleading.   The Registration Statement indicates that in connection with the rendering of Qatalyst's fairness opinions, Qatalyst reviewed, "certain forward-looking information relating to Slack prepared by the management of Slack, including financial projections and operating data of Slack, which are described above in the section entitled."

72.   In addition, the Registration Statement indicates that in connection with the rendering of Goldman's fairness opinion, Goldman reviewed, "Management Projections, including certain analyses prepared by the management of Slack related to the expected utilization by Slack of certain net operating loss carryforwards of Slack, as approved for Goldman Sachs' use by Slack, which are referred to as the "NOL Forecasts"."

73.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or […] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

74.   With respect to the "Initial Three Year Plan" set of projections for Slack, the Registration Statement fails to provide the specific adjustments made to create the "Updated Three-Year Plan and Related Extrapolations".

75.   With respect to the "Updated Three-Year Plan and Related Extrapolations" set of projections for Slack, the Registration Statement fails to include material line items for the following metrics:

   a.   Unlevered Free Cash Flow, including the specific underlying metrics of cash taxes, depreciation and amortization, capital expenditures, changes in net working capital, amortization of deferred costs, non-cash operating lease expense, and payroll taxes related to stock-based compensation;

   b.   Unlevered Free Cash Flow Less Stock-Based Compensation, including the specific underlying metrics of cash taxes, depreciation and amortization, capital

expenditures, changes in net working capital, amortization of deferred costs, and non-cash operating lease expense; and

    c.  Projected Net Income.

76.    With respect to the "NOL Schedule" set of projections for Slack, the Registration Statement fails to provide the specific inputs and assumptions used to calculate the assumed tax rate of 20% applied to the metric of Federal Tax Savings.

77.    The Registration Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the Slack projections.

78.    In addition, despite the Merger consideration being composed in part of Salesforce stock, the Registration Statement does not disclose any projections for Salesforce whatsoever, rendering it impossible for Plaintiff and other public Slack stockholders to completely gauge the value of the merger consideration offered.

79.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

80.    Without accurate projection data presented in the Registration Statement, Plaintiff and other stockholders of Slack are unable to properly evaluate the Company's true worth, the merger consideration's true value, the accuracy of Qatalyst's or Goldman's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

81.    In the Registration Statement, Qatalyst describes its respective fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

CLASS ACTION COMPLAINT

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the

valuations or evaluate the fairness opinions.

82.    With respect to the *Illustrative Discounted Cash Flow Analysis*, the Registration

Statement fails to disclose:

    a.    The specific inputs and assumptions used to calculate the discount rate range of

        8.25% to 9.75% used;

    b.    Slack's weighted average cost of capital;

    c.    The terminal values of Slack;

    d.    The specific inputs and assumptions used to calculate the range of fully diluted

        enterprise value to next-12-month's estimated UFCF multiples of 30.0x to

        45.0x applied;

    e.    The cash and cash equivalents of Slack as of October 31, 2020;

    f.    The face value of Slack's outstanding convertible debt as of October 31, 2020;

    g.    The value of Slack's non-controlling interest as of October 31, 2020; and

    h.    The by the number of fully-diluted shares of Slack common stock outstanding

        (calculated using the treasury stock method and including 0.6M shares of Slack

        common stock issuable under its employee share purchase program), adjusted

        for stock options, restricted stock units and restricted share awards, and in-the-

        money convertible debt (calculated using the net share settlement method and

        excluding any make-whole shares or other change of control adjustments), all

        as provided by Slack's management as of November 27, 2020;

83.    With respect to the *Selected Transactions Analysis* the Registration Statement fails

to provide the following:

    a.    The value of each selected transaction; and

    b.    The date when each selected transaction closed.

84.   In addition, Qatalyst partners did no analysis whatsoever of Salesforce's value or the value of the pro-forma entity despite the Proposed Transaction being composed in part of Salesforce stock.

85.   These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

86.   Without the omitted information identified above, Slack public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Slack public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman*

87.   In the Registration Statement, Goldman describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

88.   With respect to the *Implied Premia and Multiple Analysis*, the Registration Statement fails to disclose (a) the number of fully diluted outstanding shares of Slack common stock as of each date utilized; and (b) Slack's Net Debt.

89.   With respect to the *Illustrative Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to calculate the discount rate range of 6.5% to 9.5% used;

    b.   All line items to calculate UFCF less stock-based compensation;

c.  Slack's weighted average cost of capital;

d.  The range of illustrative terminal values for Slack;

e.  The specific inputs and assumptions used to calculate the applied illustrative range of terminal year multiples of 25.0x to 35.0x;

f.  The specific inputs and assumptions used to calculate the applied perpetuity growth rate of 2.3% to 6.3%;

g.  Slack's target capital structure weightings;

h.  Slack's cost of long-term debt;

i.  Slack's future applicable marginal cash tax rate;

j.  Slack's beta;

k.  The specific inputs and assumptions used to calculate the illustrative discount rate of 8.0% used; and

l.  The number of fully diluted outstanding shares of Slack common stock, as provided by the management of Slack and approved for Goldman Sachs' use by the management of Slack.

90.    With respect to the *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose the following:

a.  The specific inputs and assumptions used to calculate the applied illustrative range of NTM revenue multiples of 16.0x to 20.0x;

b.  Slack's forecasted net debt for each of the fiscal years 2021 to 2023;

c.  The number of projected year-end fully diluted outstanding shares of Slack common stock for each of the fiscal years 2021 to 2023;

d.  The specific inputs and assumptions used to calculate the illustrative discount rate of 8.0% used; and

e.  Slack's beta.

91.    With respect to the *Selected Transactions Analysis* the Registration Statement fails to provide the following:

a.   The value of each selected transaction; and

b.   The date when each selected transaction closed

92.    With respect to the *Selected Companies Analysis*, the Registration Statement fails to provide metrics for each selected company.

93.    In addition, Goldman partners did no analysis whatsoever of Salesforce's value or the value of the pro-forma entity despite the Proposed Transaction being composed in part of Salesforce stock.

94.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

95.    Without the omitted information identified above, Slack public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Slack public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### <u>(Against the Individual Defendants)</u>

96.    Plaintiff repeats all previous allegations as if set forth in full herein.

97.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

98.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Slack.

99.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the

stockholders of Slack by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Slack to its public stockholders.

100.   Indeed, Defendants have accepted an offer to sell Slack at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

101.   Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

102.   The Individual Defendants dominate and control the business and corporate affairs of Slack, and are in possession of private corporate information concerning Slack's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Slack which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

103.   By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

104.   As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Slack's assets and have been and will be prevented from obtaining a fair price for their common stock.

105.   Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

106.   Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

**Against Defendants Slack, Parent, Merger Sub I, and Merger Sub II**

107.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

108.    Defendants Slack, Parent, Merger Sub I, and Merger Sub II, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

109.    As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

110.    Plaintiff and the members of the Class have no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

111.    Plaintiff repeats all previous allegations as if set forth in full herein.

112.    Defendants have disseminated the Registration Statement with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

113.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

114.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

115.    The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

116.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

117.    The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

118.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to decide whether to vote their shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Individual Defendants)**

119.    Plaintiff repeats all previous allegations as if set forth in full herein.

120.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Company stockholders.

121.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

122.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Slack's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Registration Statement was misleading.  As a result,

CLASS ACTION COMPLAINT

the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

123.    The Individual Defendants acted as controlling persons of Slack within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Slack to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Slack and all of its employees.  As alleged above, Slack is a primary violator of Section 14 of the Exchange Act and SEC Rule Registration Statement.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.     Enjoining the Proposed Transaction;

C.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.     Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Slack and obtain a transaction which is in the best interests of Slack and its stockholders;

F.     Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.     Awarding Plaintiff, the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.     Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 8, 2021

**BRODSKY & SMITH, LLC**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT